The case of the day is Brooks v. Richardson. Good morning, your honors. Janine Hoft and along with my co-counsel Jan Susler and Nora Snyder, we represent the plaintiff appellant, Kevin Brooks, who is also present in the courtroom today. Kevin Brooks suffered a painful ruptured appendix resulting in serious and unnecessary complications due to the deliberate indifference committed by defendant federal prison officials before Mr. Brooks was finally transferred to an outside hospital where he was immediately admitted into intensive care in a life-threatening near-death condition. The Supreme Court has for denial of adequate medical care for prisoners in federal custody for 44 years. Have you brought a proceeding under the Federal Tort Claims Act? Yes, we have, your honor. It is pending in this building. So that's a separate case? It is. Okay, thank you. The 1980 decision in Carlson v. Green is one of three recognized contexts known as the Constitutional Violations. Violations of the Eighth Amendment's cruel and unusual punishment provisions have been consistently and continually upheld so long as the claim is not meaningfully different than the claims brought in Carlson. The claims here are not, and therefore the district court's decision below dismissing these claims should be reversed. Mr. Brooks was in custody in the federal work camp in Marion, Illinois. He first experienced sharp abdominal pain on Saturday, December 26, 2020. He reported this pain. It continued worsening and causing his inability to sleep and eventually his inability to walk. Before we walk through those facts, I think it would be helpful if we go to the Al-Basi Factors and walk through whether or not there is a meaningful difference with Carlson and just so that we can frame this and follow the direction of the Supreme Court. And the facts in Carlson involved an asthmatic prisoner who died due to the failure to give him proper medical attention while in federal custody. His representative brought a lawsuit against federal prison officials. As here, it was a claim under the Eighth Amendment, the very same constitutional amendment. As here, the plaintiff alleged deliberate indifference to a serious medical need. As here, this occurred in the context of a federal prison. Both involved an identified acute medical problem, a medical emergency and crisis, an appendicitis in this case versus an acute asthma attack. So we're looking at the official action. The official action in the case involved both direct service providers who failed to attend, monitor, follow up and provide appropriate treatment for Mr. Brooks as well as supervisors. In Carlson, there was a medical director who's held a similar position to Dr. Harbison in our case, who was the health services administrator. I'm sorry, tell me the name again. In our case, it's Dr. Harbison. And with regard to the allegations against Dr. Harbison, they are very similar to the allegations in Carlson against this Dr. DeGarcia. The Seventh Circuit decision in Green versus Carlson specifically identifies the culpability of Dr. DeGarcia. And so what about the camp administrator? Yes, the camp administrator actually physically observed Mr. Brooks, saw him in pain, ensured him that he would get medical treatment and that he would be taken out. I think she said something like, you haven't gotten out to a hospital yet? And then he was not taken out to a hospital. So in addition, her culpability also revolves around the procedures. And as I was starting to say, with regard to Dr. Harbison. You were talking through Dr. Harbison? Yes, yes. And so the issues are similar in terms of the Seventh Circuit decision characterizes Dr. DeGarcia in Carlson as his failure to institute or enact emergency procedures when a physician was not present. So similarly here, we have Dr. Harbison and the camp administrator Schreiber who have not instituted appropriate or adequate procedures and policies and protocols for when to monitor prisoners in their custody. How does an argument like that survive Iqbal? Say that again, Your Honor? How does an argument of that strength survive Iqbal? Well, in terms of the idea of notice. Supervisory liability. You can talk about Iqbal. You can talk about Vance against Rumsfeld, our en banc decision, which your brief doesn't talk about. I understand, Your Honor. So the personal involvement of both of these individuals, despite their supervisory positions, does allow for them to be not in a meaningfully different position than the defendants in Carlson versus Green. The Supreme Court did not discuss that question. But it did in Iqbal. That's why I'm asking you about Iqbal. Well, Your Honor, that was not an issue that we, as you pointed out, that we, so if we can certainly brief that issue. If we need further briefs, we'll let you know.  That would be great. So in terms, again, and to continue with the comparison between Carlson versus Green and the case here, the issue, and I think the district court below, but this was not then argued by the government in its brief, that the district court below indicated, well, in Carlson versus Green, the prisoner died. And in this case, the prisoner has not died. We don't believe that that's a meaningful difference. In our case, we have permanent injury and unnecessary suffering versus in Carlson, the prisoner actually died. But both involved a delay in transport to the hospital. Again, the district court below indicated . . . You can move to that last factor, the last two, the disruption. This disruption, intrusion of judiciary into the functioning of other branches. Because what we find ourself is, again, is there a meaningful difference between Carlson and here? Looking at that Albasi factor, the question, when you already have other avenues similar to the federal tort claim that's pending, why would there be a need or, I guess, would there be discussion as to whether or not this is a disruptive intrusion? Well, we don't believe that it is because of the specific language in Carlson versus Green that specifically talked about the Federal Tort Claims Act and talked about how the Federal Tort Claims Act was not a sufficient protector, I believe the language was, of an individual's constitutional rights. So beyond that, and one of the bases of that finding was that there was inadequate possibility for remedy and damages. In the FTCA, you're limited, you can't have a jury trial, and your damages are limited. And Carlson versus Green, the Supreme Court said that's an inadequate remedy. So we don't think that's a disruption of any kind of judicial intervention or anything. And beyond that, the government below has raised the issue of the grievance procedure. And for the first time, we hear about the OIG, the DOJ's Office of Inspector General, possibility that Mr. Brooks could have made a complaint. And obviously, both the grievance procedure and the complaint with the OIG would not yield any remedy or monetary damages, such as that the Supreme Court in Carlson versus Green was concerned about. So beyond that, Mr. Brooks, and of course this is not a PLRA case, there's not an issue of exhaustion of remedies. The issue here is that Mr. Brooks is entitled to get remedy for the pain and suffering, and the permanent injury that he endured as a result of the defendant's actions, and to hold them accountable. That's kind of going into count two, and I know we don't want to run into your rebuttal time on that supervisory liability. Can you talk through why the court erred in dismissing count two? And the complaint may have been inartfully drafted. We didn't need a count one and a count two. We believe that both Dr. Harbison and Camp Administrator Schreiber were personally involved in this case, as responsible for providing adequate medical care to the prisoners in their custody. And beyond that, count one— Ms. Schreiber would not have had a role in regards to providing medical care. No, though Schreiber took it on in terms of actually seeing Mr. Brooks in horrible pain and ensuring him that he would get immediate treatment, and that didn't happen. So beyond that, though, we do believe that there are Bivens claims in count one that are appropriate to be litigated here. With regard to my time, let me just say that the other issue is that the Carlson v. Green, there's not an implication of a policy system-wide, which the government has argued those were the same concerns and very like those concerns in Carlson. Mr. Brooks remained in custody in pain for 14 days before he was given appropriate and adequate treatment. When he finally got to the hospital, his appendix had ruptured, and that delay caused extensive infection. That delay caused him to have to undergo multiple surgeries rather than the simple appendectomy that generally would have had to be done. And in regard to the appellant, Kevin Brooks is entitled to develop his deliberate indifference to his serious medical condition claims and present those claims to a trier of fact. The granting of the motion to dismiss the defendant should be reversed. Thank you. Thank you, counsel. Mr. Hartzler. May it please the court, counsel. My guess is that the court already knows about this, but just in case, I want to draw the court's attention to a case that was argued in this courtroom last week in front of a different panel. The case is called Watkins v. Mohan. Could you raise your voice so the microphone records? But this is a very big room. There was a case argued in this courtroom last week called Watkins v. Mohan that involves essentially the same Eighth Amendment Egbert issue. The case number is 24-1151, and I just wanted to draw the court's attention to that before we start. I think one way to think about this case is to look back at the Snowden case from last year and ask, why did Snowden come out the way it did? In Snowden, which was obviously a Bivens Fourth Amendment case, there were factual distinctions that the officer urged the court to find created a new Bivens context. A different number of officers were involved, whether it happened in public versus private, whether they had a warrant or not. And the court's analysis ultimately was that the moment it issues this arrest that happened, and allegedly I think the officer punched the- I think Snowden really was directed more to the question of whether or not there's a meaningful difference between the cases where the Supreme Court has found a right of action and cases where there hasn't been. And so I think that it would be more helpful if we turn to answering that question as to whether or not looking at Carlson, which is the case that counsel has selected to be most similar, is there a meaningful difference? And if not, and if so, why, why not? There is a meaningful difference, Your Honor, and the difference is the involvement of policy considerations when it comes to transferring an inmate to an external facility such as a hospital resource- Were those policy considerations in place in Carlson when we had medical needs and of course where we had someone needing to be transported out? Unfortunately, because of death, because of the lack of medical treatment. I think the truth is probably that you could say there are policy considerations at place in any situation that happens in any prison. And in fact, the Solicitor General said that in Carlson against Green. Correct. And the Supreme Court did not think that adequate. What I take from Carlson and why Carlson is a different context than this case is that the Supreme Court has, at least under the current jurisprudence, already said that whatever policy considerations were at issue when it comes to an emergent medical situation that should have been treated in the prison, the Supreme Court has spoken and hasn't overturned that. When it comes to a different type of policy consideration, such as we need guards to take someone, to take an inmate out to a different facility, they need to stay there while it happens, what are the relationships the prison has with the hospitals, how available is it to take someone out, those are new policy considerations. I want to make sure I understand. So the policy consideration, say it one more time, just a little slower, a little louder. Sure. It's really hard for me to pick you up. I'm so sorry, Your Honor. I'm sorry. Resource constraints relating to transferring patients in prisons to external facilities such as hospitals, security. Believe it or not, there were resource constraints in the federal prison system in the 1970s. Yes. What we're urging is that those resource constraints were understood by the Supreme Court at the time and the Supreme Court came down on the side. I doubt that they were understood by the Supreme Court at the time.  But it did what it did, right? The Supreme Court has made it crystal clear that it would not today decide Carlson against Green the same way it did in the 70s. But it hasn't been overruled, and there it is. I don't see how we can underrule it. Right. We're not asking that Carlson be underruled. But go through those factors because, to me, I don't see any meaningful difference. When you look at the factors, unless you're going to say, well, Carlson's about medical treatment, but if the medical treatment's more than a hangnail, if you need to go actually have someone other than the nurse in the facility see you, Carlson doesn't apply. If the individual's name isn't the same, Carlson doesn't apply. I mean, the Supreme Court has told us how to look at the meaningful difference. And while it's cautioned against new contexts, it's given us guidance in those factors here. Take the rank of the officers and supervisory liability off the table. Focus on the lower-level individuals, lower in terms of their position in the facility, and walk through those factors. Right. So we're not urging that the severity of the injury creates a new context or is a meaningful difference for Carlson analysis. What we're urging is that the transfer out is the meaningful difference. And that's why I was trying to talk about the Snowden case at the beginning, because in Snowden there were differences, but the court ultimately said, well, look, fundamentally it's about, you know, allegedly the officer punched the inmate in the face during the arrest. There's a great body of case law telling you you can't do that. How many officers were watching that happen? Did they have a warrant? We've said we've come back. We've explained in Sargent that factual differences. We want you to walk us through meaningful differences, factual differences, one thing. But we have to see them in a line, going back to Judge Kollar's question, in a line with Albassi and the factors that the Supreme Court has directed us to consider. And so transferring out, the need to transfer the offender out, where would that fall within these factors? It's the risk of disruptive intrusion by the judiciary into the functioning of other branches of government, this being the executive branch. The point I've been trying to make is just that, you know, whether or not punching a suspect in the face is allowed or not doesn't turn on whether someone else was watching it or whether there was a warrant or where it was in the private or public. But when it comes to transferring an inmate out, that does implicate new policy considerations. And what this court said in Snowden is that if a factual distinction might alter the policy balance, that's enough to find a new context. So the might is a pretty low bar to clear. I think it's worth also reminding ourselves that the five defendants are not a monolith. There was some discussion about Harbison and Schreiber during Ms. Hoff's argument. And the complaint does not allege that Harbison had any involvement in the alleged actions at all. To me, that's open and shut, that Harbison's dismissal should be affirmed. Schreiber is alleged to have seen the defendant, Schreiber being the administrator of the facility, is alleged to have seen Mr. Brooks in his cell in pain. That's where the complaint stops with respect to allegations about Schreiber, setting aside the procedure and policy allegations. So you don't even need to reach the Eggburn analysis with Harbison and Schreiber, in my opinion. With respect to count two against Harbison and Schreiber, I guess you technically do reach the Eggburn analysis. What about Dr. Harbison? What was alleged in the complaint? Nothing. What did you say again? Okay. Other than count two, which alleged that there were unconstitutional policies. And so the argument that we heard this morning was not contained in the complaint as it related to Dr. Harbison?  I heard Ms. Hoff just say that Director Schreiber told the plaintiff that he was going to be taken out, and I don't think that's in the complaint. I'm pretty confident that's not in the complaint. The complaint says nothing about Harbison at all, other than the policy allegations in count two. And about Schreiber, what's included there? Just the allegation that Schreiber saw Mr. Brooks in pain in his cell, and then the policy allegations. And I want to make sure I understand your position here. The decedent in Carlson, I believe it was Jones, Mr. Jones, if he had been transferred out of the facility, gotten maybe not appropriate, but somewhat timely medical care and lived, this case would be the same or not substantially different for our analysis here. Is that your argument? I guess it would depend on what had ended up being alleged in the wake of that transfer out. I would agree that if the Supreme Court had found a cause of action under Bivens in a context where the allegation was they should have sent me out and they didn't, then this would obviously be the same context as that. And as a corollary to that, you're not arguing that severity? We're not. Makes this meaningfully different. But it seems to me that your argument would say that if Mr. Brooks' treatment was delayed even a little bit longer, and the record seems to suggest that if it was delayed longer, he would have unfortunately passed away, never left the facility, and then he has a Bivens claim. Is that the argument? I don't think so, Your Honor, because the fundamental allegation in the complaint is they didn't transfer me out. It repeatedly describes the providers as not sending him to a hospital and not telling someone that he needed to go to a hospital. And so, thankfully, we didn't have a death in this case. I think the complaint is suggesting that because of a ruptured appendix, he was given Tylenol. He was medically indifferent. Right. I mean, that's another thing that kind of implicates the Bureau's general management of paying complaints by inmates. What's the right thing to do the first time someone complains of pain? I think most people would probably say sending everyone who complains of pain to the hospital would be excessive, and it would certainly be an intrusion for the judiciary to say that. Hindsight is 20-20, so if someone gets Tylenol, it turns out they had something worse. That unfortunately happens. Did I answer Your Honor's question? Okay. The last thing I'll mention that came up earlier is that Mr. Brooks is prosecuting his Federal Tort Claims Act claim. That litigation will answer the question of should the providers have transferred him sooner, should they have done something different, and he's got damages remedy there. So if the panel has no further questions, we'd ask that the judgment be affirmed. Thank you. Thank you. Anything further, Ms. Hoft? Please wait until you get to the microphone. Thank you. Just in terms of the allegations in the complaint, the plaintiff's complaint is taken as true, and any motion to dismiss should be denied unless it appears beyond doubt that Mr. Brooks could prove no facts that would support his claim for relief. In terms of the complaint itself, and in terms specifically Dr. Harbison, Dr. Harbison was the health services administrator at the facility. Dr. Harbison at Paragraph 4 was a medical provider employed there. Dr. Harbison was responsible for the establishment, implementation of the policies and practices throughout the recitation in the complaint of the facts with regard to the actual direct service providers. They failed to monitor, failed to conduct any testing to determine what the rupture was and how it had progressed. But now don't you have an Iqbal problem going back to Judge Easterbrook's question? Well, I'm not sure the issue of Iqbal here because we're entitled to any set of facts that we can prove. And obviously Mr. Brooks is – Actually, the Supreme Court expressly withdrew that old test in Twombly. That hasn't been the law for 20 years. I understand. So why do you cite a legal standard that has been expressly rejected by the Supreme Court? The motion to dismiss, however, should not have been granted because there are allegations in the complaint that could be shown. And Mr. Brooks was in a position as a federal prisoner to not know what the higher-ups were doing or how they worked. And with regard to the other allegations of the individuals of the plaintiff, the motion to dismiss should be reversed. Thank you. The case is taken under advisement and the court will be in recess.